UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

RENE VICENTE-CRUZ,

Defendant.

Case No. 3:26-mj-00293

**OPINION AND ORDER**

---

Scott E. Bradford, United States Attorney, Andrew Kartchner, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204. Attorneys for the United States.

Mark Ahlemeyer, Assistant Federal Public Defender, 101 SW Main Street, Suite 1700, Portland, Oregon, 97204. Attorney for Rene Vicente-Cruz.

**ARMISTEAD, United States Magistrate Judge**

Defendant Rene Vicente-Cruz, having been charged by complaint by the government with the offense of illegal reentry, 8 U.S.C. § 1326(a), made his initial appearance before the

court on October 29, 2026. Because illegal reentry is not one of the crimes enumerated in 18 U.S.C § 3142(f)(1) of the Bail Reform Act of 1984 (BRA), which would have entitled the government to a detention hearing, it was required to move for a detention hearing under § 3142(f)(2). The government did so on the ground that Vicente-Cruz posed a serious risk of flight if released. To meet its burden and in accordance with the practice in this district, the government argued the factors articulated in *United States v. Molina-Orantes*, 798 F. Supp. 1204 (2025), and *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131 (D. Idaho 2023)—incentives to flee, ability to flee, ties to the court's jurisdiction relative to his home country, and trustworthiness and reliability.

Vicente-Cruz, in response, did not engage with the *Molina-Orantes* factors. Instead, he asserted that it was impossible for him to pose a serious risk of flight because of the government's recent practice of taking defendants released under the BRA who have Immigration and Customs Enforcement (ICE) detainers into custody and deporting them, after which the government moves to dismiss the § 1326(a) charge. Given the certainty that he would be taken into custody and deported if released, Vicente-Cruz viewed intentional flight as a factual impossibility. After a lengthy colloquy with the parties as to whether Ninth Circuit case law—*United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015), and *United States v. Diaz-Hernandez*, 943 F.3d 1196 (2019)—foreclosed Vicente-Cruz's argument, the court asked for briefing and took the matter under advisement. As explained below, the court agrees with the government that those cases preclude consideration of Vicente-Cruz's release to ICE custody, even if it is certain. The government has thus met its burden under § 3142(f)(2)(A) by proving that Vicente-Cruz poses a serious risk of flight and is entitled to a detention hearing.

## BACKGROUND

On September 19, 2026, Vicente-Cruz was arrested by the Woodburn Police Department for driving under the influence (DUII), reckless driving, providing false information to a police officer, and second-degree failure to appear. (Affidavit (Aff.) ¶ 6, ECF 1-1.) He was fingerprinted, and the fingerprints revealed that Vicente-Cruz is a Guatemalan native and citizen who has been removed from the United States three times: on September 30, 2008, on February 27, 2018, and on September 13, 2018. And there is no indication in his immigration history that he had ever applied for or obtained permission from the United States Attorney General or the Secretary of Homeland Security to reapply for admission after removal. (Aff. ¶ 8.) The government charged by criminal complaint the offense of illegal reentry, 8 U.S.C. § 1326(a).

Before his initial appearance, Vicente-Cruz, on the advice of his lawyer, declined to interview with U.S. Pretrial Services, so nothing is known about where he works or lives, his family or community in Oregon, or his connections to his native Guatemala. Even so, it is known that Vicente-Cruz has an ICE detainer and that there is an order for his removal. Vicente-Cruz also has a criminal history. In addition to immigration violations reaching as far back as 2008, there are DUII prosecutions in 2021, 2024, 2025, and 2026. There are also several other driving or vehicle related offenses, including more than once giving false information to a police officer.

## DISCUSSION

***Serious Risk of Flight/BRA.*** Under the BRA there is a presumption of release when a defendant is brought before the court for their initial appearance. *See* 18 U.S.C. § 3142(b) (the court must release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination "that such release will not reasonably assure the

appearance of the person as required or will endanger the safety of any other person or the community"). If the government seeks to have a defendant detained before disposition of their case, the BRA requires the government to show that it is entitled to a detention hearing. 18 U.S.C. § 3142(f); *Molina-Orantes*, 798 F. Supp. 3d at 1210 ("It is now well settled in the Ninth Circuit that the Government may not seek a defendant's pretrial detention unless the (f)(1) or (f)(2) criteria are satisfied.") (citing *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003)). If, on a motion by the government, the court determines that the offense with which the defendant is charged falls within five categories of serious criminal offenses, the government is entitled to a detention hearing. 18 U.S.C. § 3142(f)(1).

Where, as here, the defendant is not charged with one of the serious offenses listed in 18 U.S.C. § 3142(f)(1), and the government seeks a detention hearing, it must move under subsection (f)(2) and prove that there is a "serious risk" that the defendant "will flee." 18 U.S.C. § 3142(f)(2)(A); *see also* 18 U.S.C. § 3142(f)(2)(B) (the government is entitled to a detention hearing if it can prove that the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror"). And the government must show a serious risk of flight by a preponderance of the evidence. *See Molina-Orantes*, 798 F. Supp. 3d. at 1211-12 (citing *Figueroa-Alvarez*, 681 F. Supp. at 1138); *Santos-Flores*, 794 F.3d at 1090 ("On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk.") (citation omitted). If the government establishes its entitlement to a detention hearing under subsection (f)(1) or (f)(2), the court balances the factors set out in § 3142(g) to determine

whether the government has met its burden that there are no conditions that will reasonably assure the safety of the community or the defendant's appearance. 18 U.S.C. § 3142(e).

Illegal reentry, 8 U.S.C. § 1326(a), is not one of the serious offenses under subsection (f)(1), and the government regularly (if not always) moves in this court to have a defendant charged with that offense detained under subsection (f)(2) as a serious risk of flight—as they did at Vicente-Cruz's initial appearance. In its motion for a detention hearing on ground that Vicente-Cruz poses a serious risk of flight, the government argued under the framework set out by Chief United States Magistrate Judge Raymond E. Patricco in *Figueroa-Alvarez*, 681 F. Supp. 3d at 1139-45, for analyzing the flight risk of defendants charged with illegal reentry. Since United States Magistrate Judge Stacie F. Beckerman issued her opinion and order in *Molina-Orantes*, which tracked the analysis in *Figueroa-Alvarez*, this court has had the parties argue the "*Molina-Orantes* framework" when the government moves for a detention hearing under subsection (f)(2) for defendants charged with illegal reentry.

The court pauses a discussion of the government's *Molina-Orantes* argument at Vincente-Cruz's initial appearance to discuss the framework set out by Judges Patricco and Beckerman. To begin with, they were careful to distinguish the "serious risk that [a defendant] will flee" under subsection (f)(2)(A) from the risk of nonappearance under § 3142(g). The court need not repeat their careful statutory analysis and review of case law; it suffices to say that a serious risk that a defendant will flee is "a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Molina-Orantes*, 798 F. Supp. 3d at 1214 (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1137); *id*. ("flight must be intentional[] and not the result of mere negligence or mistake"). To examine

that serious risk in the illegal reentry context, the court considers four categories of relevant factors: the defendant's (1) incentives to flee (which entails the weight of the evidence and potential punishment); (2) ability to flee; (3) ties to the district's jurisdiction and the United States relative to their foreign ties; and (4) reliability and trustworthiness. *Molina-Orantes*, 798 F. Supp. 3d at 1215-19.

***The Hearing.*** With those factors in hand, the government argued that as to the first *Molina-Orantes* factor—Vicente-Cruz's incentives to flee—the weight of the evidence was strong given the "biometric, photographic, documentary" evidence of his identity and prior removal proceedings, and that the potential punishment, although not significant, was greater than the zero- to six-months custodial sentence typically imposed in § 1326(a) cases. (Tr. 3:14-23.) As for the second *Molina-Orantes* factor—ability to flee—the government observed that Vicente-Cruz had been convicted thrice of providing false information to law enforcement and that he uses false aliases. Because Vicente-Cruz had not interviewed with Pretrial Services, nothing was known about any financial resources available to him that would enable him to flee. (Tr. 3:24–4:19.) As for the third *Molina-Orantes* factor—ties to the United States and the district's jurisdiction relative to foreign ties—the government recognized that not much was known other than Vicente-Cruz's removal history, which indicates that he "does have some history here in the United States in terms of length of residence." (Tr. 4:11-19.) And as for the fourth *Molina-Orantes* factor—trustworthiness and reliability—the government pointed to Vicente-Cruz's criminal history that reflected a "long history of violating the laws in the United States and not subjecting himself to court orders." (Tr. 4:20–5:19 (pointing out six failures to appear in state court, three convictions for DUII and false information, one revocation of

probation and one revocation of diversion).) All in all, according to the government, Vicente-Cruz's recent criminal and court proceedings history combined with the slightly heightened criminal punishment and weight of the evidence was sufficient to meet the government's burden of proving that there was a serious risk that Vicente-Cruz would flee if the court were to release him. (Tr. 5:20–6:2.)

Vicente-Cruz did not argue otherwise, at least with respect to the factors the government advanced. He viewed *Molina-Orantes* as the correct framework for deciding serious risk of flight for those charged with illegal reentry when it was uncertain what would happen to defendants with ICE detainers upon release. But it made no sense to him to apply those factors when it is the consistent practice of the current executive branch administration to place defendants with an immigration detainer and released under the BRA into ICE custody and then deport them. Given that there is an existing order of removal, "[t]here is no scenario" in which he "hits the street again." (Tr. 7:23-24.) That practice, he argued, forecloses his ability to engage in any intentional conduct that would give rise to a serious risk of flight. That is, he will remain in the government's custody until his deportation, eliminating any risk that he will undertake a volitional or an intentional act to evade this court's jurisdiction. The government, Vicente-Cruz argued, cannot carry its burden on showing it is entitled to a detention hearing on those facts. (Tr. 8:2-8.)

The government, in response, asserted that the likelihood of Vicente-Cruz's detention by ICE cannot be considered by the court under *Diaz-Hernandez*, in which the Ninth Circuit held that district courts cannot speculate as to whether a defendant will be detained by ICE when deciding whether to detain or release under § 3142(g). When the court asked the government

how certain it was that a defendant in Vicente-Cruz's circumstances would be taken into ICE custody and deported, and the case dismissed, the government answered that although it wasn't a "hundred percent certainty," it "is going to be very, very common in these types of cases" that the defendant will be taken into ICE custody and the government will execute their removal order. (Tr. 10:15-19.) When asked how certain it was that Vicente-Cruz specifically would be taken into ICE custody if released by the court, the government acknowledged that it was 99 percent certain that he would. (Tr. 21:19-21.) In light of the lengthy colloquy about whether *Santos-Flores* and *Diaz-Hernandez* controlled in the government's favor, the court asked for briefing.

***Santos-Flores* and *Diaz-Hernandez*.** In *Santos-Flores*, the Ninth Circuit held that the district court erred in relying on an ICE detainer and the probability of Santos–Flores's detention and removal to find that no condition or combination of conditions would reasonably assure his appearance. 794 F.3d at 1092. The court reasoned first that the district court's decision was contrary to the express language of the BRA, which provides specific procedures for undocumented defendants. 794 F.3d at 1090-91. In the event a defendant is not a lawful citizen, the court must determine whether they may flee or are dangerous under 18 U.S.C. § 3142(d). If so, the court must detain the undocumented defendant for not more than 10 days and the attorney for the government must notify the appropriate immigration officials. Even temporary detention, observed the court, requires a danger or flight risk, which are voluntary acts. If the immigration officials do not take custody during that 10-day period, the court is to treat the defendant in accordance with the other provisions of the BRA, "notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." *Id.* at 1091 (citing 18 U.S.C. § 3142(d)).

The court in *Santos-Flores* added that removal by ICE was "neither automatic nor obligatory." *Id.* (citing *Villa-Anguiano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013)). Upon release, ICE could exercise its discretion to immediately remove the defendant, or it might delay or forgo removal in favor of prosecution. The government could not, however, "use its discretionary power of removal" to categorically deny or trump "a defendant's right to an individualized determination under the Bail Reform Act." *Id.* ("the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition").

In *Diaz-Hernandez*, the Ninth Circuit addressed whether the district court erred in not considering the likelihood that a defendant charged with illegal reentry would be detained and remain in ICE custody. 943 F.3d at 1199. The lower court, in deciding whether pretrial release was proper, declined to consider the effect of the detainer or "wade into the likelihood that the detainer would be withheld or filed." *Id.* at 1198-99. The Ninth Circuit affirmed. Noting that the issue was a "mirror" to the issue in *Santos-Flores*, the court held that the "individualized evaluation" required by the BRA and "guided by the factors articulated in § 3142(g)" forecloses consideration of an immigration detainer to support a categorical denial or a categorical grant of bail. *Id.* at 1199.

*Diaz-Hernandez* rested its conclusion on two grounds. First, it observed that "immigration status" is not one of the factors that the court must weigh when determining whether there are conditions which would reasonably assure the defendant's court appearances under § 3142(g). *Id.* at 1198. While "alienage may be taken into account," it is not dispositive. *Id.* To consider an undocumented defendant's immigration detainer as "conclusive evidence that he poses no risk of nonappearance" would render consideration of the other factors

"superfluous." *Id.* at 1199. Second, the court in *Diaz-Hernandez* emphasized that "detention of a criminal defendant pending trial under the BRA and detention of a removable alien under the Immigration and Nationality Act (INA) are separate functions that serve separate purposes and are performed by different authorities.'" *Id.* (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019)) (citation modified). The district court, the Ninth Circuit ruled, "may not speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime" when "addressing whether pre-trial detention is appropriate" under the BRA. *Id.* at 1199.

This court, other judges in this district, the government, and defendants have recognized the Ninth Circuit's instruction to disregard any ICE detainer when evaluating release under the BRA for defendants charged with illegal reentry. *See Molina-Orantes*, 798 F. Supp. 3d at 1215-16 (in *Santos-Flores* and *Diaz-Hernandez*, "the Ninth Circuit has instructed that courts shall '*not* consider the prospect of the [undocumented] defendant's immigration detention or involuntary deportation if released from criminal custody'") (quoting *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140). The government argues that those holdings, despite arising in the context of full detention hearings and the § 3142(g) factors, apply equally to a motion for a detention hearing under § 3142(f)(2)(A). According to the government, the principles relied on in *Santos-Flores* and *Diaz-Hernandez*, cannot be cabined solely to determinations under § 3142(g) because at the core of those decisions is the Ninth Circuit's distinction between the BRA and the INA. It is the "different statutory and regulatory regime[s]" that foreclose consideration of an immigration detainer under the BRA, rather than the possibility that a defendant will be detained or deported by ICE upon release. (Gov't Mem., ECF 7 at 6 (quoting *Diaz-Hernandez*, 943 F.3d at 1199.)

Vicente-Cruz distinguishes his individual circumstances from those in *Santos-Flores* and *Diaz-Hernandez*. To begin with, he posits that it is a "virtual certainty" that he will be detained by ICE if released and then deported if the court releases him—the government conceded as much. (Tr. 21:6-23.) That is different, he asserts, from the *Diaz-Hernandez* court's admonition to not "speculate" as to "what may or may not happen in the future." (Def.'s Mem., ECF 8 at 9 (quoting *Diaz-Hernandez*, 943 F.3d at 1199).) He asserts that the government cannot carry its burden without asking the court to engage in a counterfactual or hypothetical analysis—that is, the court should determine whether Vicente-Cruz is a serious risk of flight even though he will almost certainly not be released from custody and thus cannot voluntarily flee anywhere.

In his urging the court to reject that approach, Vicente-Cruz points to *United States v. Mendoza-Belleza*, 420 F. Supp. 3d 716 (E.D. Tenn. 2019). There, the District Judge held that the government could not satisfy its burden under § 3142(f)(2)(A) because if the defendant was released, ICE would "immediately detain him and deport him within ninety days," thus the risk of flight was "admittedly nonexistent." 420 F. Supp. 3d at 718. Like Vicente-Cruz, Mendoza-Belleza was subject to a final order of removal. And like Vicente-Cruz, the government conceded that Mendoza-Belleza would be deported if released. The court therefore was not authorized to conduct a detention hearing. *Id.*

Vicente-Cruz distinguishes between his circumstances, where ICE custody and deportation were virtual certainties, and the uncertain circumstances of criminal defendants subject to ICE detainers under prior administrations and warrants in other jurisdictions. Under past administrations, Vicente-Cruz explains, ICE detainers would regularly be lifted upon pretrial release, making it a "real possibility" that a defendant would be released into the community.

(Def.'s Mem., ECF 8 at 5.) Likewise, where a criminal defendant would be released to the local county jail, risk of flight remained a concern where the defendant could post bail at any time. *See United States v. Samford*, 1:23-cr-00051-MR-WCM, 2023 WL 9757551 (W.D.N.C. Aug. 9, 2023) (rejecting a defendant subject to a state arrest warrant's attempt to rely on *Mendoza-Belleza* for the proposition that he was not a flight risk). The crux of Vicente-Cruz's argument is that neither *Santos-Flores* nor *Diaz-Hernandez* "are so broad as to require a court—when faced with certainty as to what will happen with a given defendant—to ignore reality when conducting an individualized determination about whether the government has prove that person presents a serious risk of flight under § 3142(f)(2)(A)." (Def.'s Mem., ECF 8 at 10.)

***Conclusion***. At bottom, the government insists that *Santos-Flores* and *Diaz-Hernandez* require the court to make an "individualized evaluation" irrespective of the virtual certainty that Vicente-Cruz will be taken into ICE custody and deported if the court were to release him. But that insistence ignores two observations in *Santos-Flores*: (1) the voluntariness of a defendant's actions must inform detention or release decisions and (2) "[r]einstatement of a prior order of removal is neither automatic nor obligatory." 794 F.3d at 1091. The virtual certainty that Vicente-Cruz would go into ICE custody upon release makes factually impossible any element of voluntariness that *Santos-Flores* has stated is necessary. It also makes impossible the intentional evasion that defines "serious risk of flight" as set out by *Molina-Orantes* and other district courts. And here, unlike in *Santos-Flores*, the decision to detain and deport a defendant in Vicente-Cruz's circumstances is in fact "automatic." The prosecutor acknowledged as much when he said that he hadn't spoken to immigration officials but represented to the court that,

based on his experience, it was 99 percent likely that Vicente-Cruz would be removed and deported. (Tr. 21:15-19.)

Nevertheless, the court cannot disregard the government's argument that to "conclusively rely" on an ICE detainer and the certainty that Vicente-Cruz would be arrested and removed by ICE to the exclusion of all other considerations required by the judiciary under the BRA would "boil the entire BRA analysis down to one dispositive factor." (Gov't Mem., ECF 7 at 7.) To rely on that one factor alone obviates any consideration of the factors articulated in *Molina-Orantes*, which is an "individualized evaluation" of a defendant's circumstances. In effect, the existence of an ICE detainer and the attendant removal proceedings—whether it is a "possibility" as contemplated in *Diaz-Hernandez*, 943 F.3d at 1199, or whether, as here, it is a virtual certainty—leads to a grant of release that ignores any of the other circumstances specific to the defendant, something that the Ninth Circuit instructs judicial officers applying the BRA to avoid. *Id*.

And the Ninth Circuit in *Diaz-Hernandez* has clearly stated that ICE and the USAO are "different authorities" that implement the separate functions and purposes of the BRA and INA. *Id*.; *see also* 18 U.S.C § 3142(d) (allowing court-ordered temporary custody of a removable alien if the court determines that the alien is a flight risk or is dangerous to allow immigration officials to take custody of the defendant). Even though Vicente-Cruz, the government, and the Ninth Circuit all appear to agree that there is a *single* executive branch decisionmaker (*see* Def.'s Mem., ECF 8 at 2-3 ("*the Executive Branch* has functionally delegated the decision to prosecute to the Judicial Branch—if a judge finds a defendant releasable under the BRA, she will be deported immediately; if a judge detains a defendant, she will be prosecuted instead (and then deported later))"; Gov't Mem., ECF 7 at 12 ("the choice of whether to defer immigration action

in favor of criminal prosecution *belongs to the Executive*")); *Santos-Flores*, 794 F.3d at 1091 ("The *government* may, therefore, elect to deliver the alien to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately pursuant to 8 U.S.C. § 1231(a)(5)."), the court cannot overlook the fact that there are two distinct and independent custodial paths and authorities at play, and only one of those authorities is to be applied by the court. So, as instructed by *Diaz-Hernandez*, the court may not consider the decision by immigration officials to take a released defendant into custody. That means that whether ICE custody and removal is a certainty, a virtual certainty, or a "possibility" is of no moment. *Diaz-Hernandez*, by explaining that there are two separate authorities for detention that operate independently of each other, did not hinge on whether the judicial officer based its decision on a speculative or nonspeculative finding about the consequences of a release decision. And that distinction is sufficiently broad to permit its application to § 3142(f)(2) hearings.

Thus, setting aside the certainty that Vicente-Cruz will be taken into ICE custody and eventually deported, the court applies the *Molina-Orantes* factors to make the "individualized evaluation" required under § 3142(f)(2). Discussed earlier, little is known about Vicente-Cruz's ability to flee or his ties to this jurisdiction or the United States. The government, however, makes a sufficient showing as to Vicente-Cruz's incentive to flee and his reliability and trustworthiness.

*Incentive to Flee.* An undocumented defendant's incentive to flee turns on his potential punishment and the weight of the evidence. *Molinas-Orantes*, 798 F. Supp. 3d at 1215. If he is convicted of violating § 1326, Vicente-Cruz's prior criminal history is an aggravating factor in his anticipated sentence. *See id.* ("extent of an [undocumented] defendant's potential punishment

for violating § 1326 hinges primarily upon his or her prior criminal history") (citation omitted). Vicente-Cruz has been removed from the United States three times and has already been convicted of illegal re-entry under 8 U.S.C. § 1326(a) once before. He has also been convicted of DUII three times, Giving False Information to a Police Officer three times, and Failure to Appear. Taking all that into account, Vicente-Cruz could spend anywhere between six and 21 months in prison under the advisory sentencing guidelines. (Gov't Mem., ECF 7 at 3.) *See Molina-Orantes*, 798 F. Supp. 3d at 1214 (noting that undocumented defendants without significant criminal histories often face a range of imprisonment between zero and six months under the sentencing guidelines). Coupled with the weight of the government's "biometric, photographic, documentary" evidence (Tr. 3:9-13), the prospect of a longer prison sentence creates a strong incentive to flee. *See United States v. Amador Lopez*, No. CR RDB-26-0031, 2026 WL 820380, at *5 (D. Md. Mar. 25, 2026) ("the risk of potential incarceration for at least several months if not more than a year if found guilty and the possibility of deportation upon completion of that sentence present an incentive for [the defendant] to flee").

*Reliability & Trustworthiness.* Prior instances of disregarding or violating court orders are indicative of a defendant's reliability and trustworthiness. *Molina-Orantes*, 798 F. Supp. 3d at 1218 (citing *Figueroa-Alvarez*, 681 F. Supp. 3d at 1143). Illegal reentry into the United States after removal is one example of an undocumented defendant's failure to respect the law or court order, although it is more predictive of nonappearance than flight. *Id.* That is because "illegal reentries simultaneously demonstrate the [undocumented] defendant's disregard for court orders and . . . his or her strong desire to remain in the United States." *Id.* Substance abuse is also only "marginally predictive of flight" because although defendants who abuse alcohol are less reliable

and trustworthy, they likely do not have the resources or the facilities required to flee. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1145. Likewise, "prior violation of terms of supervised release, probation or parole" can be predictive of flight if those unexplained failures to appear "involve intentional choices to avoid accountability," as opposed to "mistakes or impaired judgment." ("a defendant who make such mistakes or exhibits poor judgment is less likely to actively flee"). *Id.* Prior failures to appear, on the other hand, "are strongly predictive of flight." *Id.*

Vicente-Cruz's multiple illegal reentries, history of DUIIs, lack of success on diversion and probation, and Failure to Appear conviction all suggest that he is not reliable. Thus, when making the required "individualized evaluation," the court finds that the government has shown by a preponderance of the evidence that there is a serious risk that Vicente-Cruz will flee if released. The government is therefore entitled to a detention hearing under § 3142(g).

DATED: November 13, 2026

JEFF ARMISTEAD
United States Magistrate Judge